# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2 C 3995 | **DATE** | 4/27/2004 |
| **CASE TITLE** | Cayett Porties vs. General Electric Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: General Electric Company d/b/a GE Capital Auto Financial Services' motion for summary judgment [26-1] is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | APR 28 2004 | | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAYETT PORTIES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 02 C 3995 |
| v. | ) |
| | ) Wayne R. Andersen |
| GENERAL ELECTRIC COMPANY | ) District Judge |
| d/b/a GE CAPITAL AUTO | ) |
| FINANCIAL SERVICES, | ) |
| | ) |
| Defendant. | ) |



## MEMORANDUM, OPINION AND ORDER

This matter is before the Court on defendant General Electric Company d/b/a GE Capital Auto Financial Services' motion for summary judgment. For the following reasons, the motion for summary judgment is granted.

## BACKGROUND

Plaintiff Cayett Porties is an African American woman. General Electric Company d/b/a GE Capital Auto Financial Services ("GE AFS") is a company which provides consumer loans and automobile financing. On November 3, 1997, GE AFS hired Porties as a collections employee at its Mount Prospect office. As a collections employee, Porties serviced automobile loans that were 30, 60 and 90 days delinquent. One year later, Porties transferred to GE AFS's Barrington office and began a position in the Dialing Group in which she attempted to collect overdue payments on automobile leases that were delinquent.

In February 3, 2000, Porties transferred to a position as a collector in the Recovery Group in which she was responsible for collecting money owed on vehicles leases that had been written

off as not recoverable. The Recovery Group sought to minimize the losses relating to automobile leases by attempting to recover the vehicle if the leasee still retained possession of the car and/or by working with the leasee to develop a repayment plan. Collectors in the Recovery Group make telephone calls and write collection letters to the leasees as part of their efforts to recover the vehicles and to obtain payments on defaulted leases. Each month, GE AFS management sets performance goals for the amount of money the collectors are expected to collect. These goals are based on the Group's performance over the prior three months as well as seasonal trends and fluctuations.

GE AFS uses a Recovery Management System to randomly assign lease accounts to each of the Recovery Group collectors. However, manual assignments are made for certain types of specialized accounts, including lease accounts for Canadian citizens and "Tex-Flex" accounts. Manual assignments occurred in limited other occasions: (1) for accounts that were being sent to the Recovery Group that had not been previously assigned to any collector in the Group, those accounts would be randomly assigned to the next collector in line to receive a new account; (2) for accounts that had been referred by a collector in the Recovery Group to Legal Services and subsequently was being returned to the Recovery Group, those accounts would be reassigned to the original collector; and (3) if a collector received a phone call on an account that had been abandoned or not yet reassigned and was able to resolve the account, then the account would be assigned to that collector.

When Porties started in the Recovery Group until the time she left GE AFS, Monica McDermott was the Recovery Manager. However, Porties did not directly report to McDermott. Initially, Porties reported to a supervisor, Tim Minister. Then from April 2001 until she was

discharged, Porties reported to Adam Diliberti. On or about June 21, 2001, McDermott and Diliberti informed Porties that she was being placed on a Corrective Action Plan because of her failure to abide by management guidelines and her repeated failure to reach the collections goals set for her team. Porties had failed to meet nine of the monthly departmental collection goals between July 2000 and June 2001. In addition to not meeting her collection goals, Porties was not correctly closing her accounts, not properly documenting the work she performed on her accounts and not updating information required for certain account types.

After meeting with McDermott and Diliberti, Porties refused to sign the Corrective Action Plan when it was presented to her and requested that she be given an opportunity to present a rebuttal, which she submitted on June 27, 2001. In her rebuttal, Porties claimed that the goals set for the entire group were unreasonable and that she believed that she was being harassed and discriminated against because of a previous incident between her and Diliberti. At that time, Porties did not claim that the harassment or any alleged discrimination was based on her race.

On August 18, 2001, Porties began a medical leave of absence due to injuries she suffered in a car accident. Based on GE AFS's disability policies, because Porties had a disciplinary action pending in her personnel record when she went out on disability, she received only sixty percent of her salary. In an annual management assessment dated August 28, 2001 that was prepared while Porties was out on disability, McDermott rated Porties' performance as less than fully satisfactory. On September 27, 2001, Porties filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") alleging that she was placed on a Corrective

Action Plan, subjected to unequal terms and conditions and denied disability benefits because of her race.

Porties returned to work from her leave of absence on November 5, 2001. Upon her return, McDermott and Diliberti attempted to meet with Porties to address the concerns she raised in her rebuttal. Initially, Porties agreed to meet with them, however, later refused to continue to participate in the meeting because, as she explained to McDermott and Diliberti, she had chosen other avenues to resolve this matter. At that time, Porties also advised McDermott and Diliberti that she wanted advance notice of any future meetings they wished to have with her. On November 7, 2001, Diliberti informed Porties that her Corrective Action Plan would be extended for another two months.

Then, on November 16, 2001, a Call Quality Specialist contacted Porties to discuss a customer call that was deemed borderline unprofessional. Porties and the Call Quality Specialist had a confrontation regarding her conduct on the phone call. Also sometime during November 2001, Porties raised an issue with management claiming that certain monthly assessments of her performance contained forgeries of her signatures. Porties met with Jennifer Duncan, Director of Human Resources for GE AFS, and Melody Helms, Director of Collections for GE AFS, about her forgery allegations. These allegations were investigated by management, and ultimately there was no evidence that Porties' signature was forged on any of the performance assessments.

Thereafter, on November 29, 2001, Porties amended her IDHR charge of discrimination to include a retaliatory harassment claim. On December 12, 2001, Diliberti and Duncan met with Porties and presented her with another Corrective Action Plan for insubordination and unprofessional behavior as well as missing her monthly collection targets. Specifically, Diliberti

4

and Duncan identified four examples of Porties' insubordination: walking away from a manager while the manager was speaking with her; demanding advanced notice for meeting and refusing to attend any meetings without such advanced notice; failing to provide information requested by management; and speaking in an inappropriate tone and manner during discussions with management, including using a confrontational, intimidating and disrespectful manner of communication. The December 12, 2001 Corrective Action Plan also stated that further display of insubordination or unprofessional behavior or failure to meet target collection goals may result in termination. In December 2001, Diliberti and Duncan also denied Porties' request to carry over the 2001 vacation time she had accrued and to delay her vacation until 2002. GE AFS did not permit any collectors in the Recovery Group to carry over unused vacation time into 2002.

Diliberti and Duncan met with Porties again on January 7, 2002 and presented her with a notice that her Corrective Action Plan was being extended for an additional 30 days. During that meeting, Diliberti and Duncan reviewed Porties' phone records from a weekend overtime opportunity in which Porties logged over three hours of overtime and pointed out that during that three hour period she had made only one business-related call which lasted fifteen seconds while she spent forty-seven minutes on personal calls. On or about January 8, 2002, GE AFS also placed five additional employees, including one Hispanic, one Caucasian, two African American employees and another employee race unknown, on Corrective Action Plans for their repeated failure to meet their collection goals.

After extending Porties' Corrective Action Plan in January 2002, Diliberti continued to monitor her telephone use, and he noticed that Porties would log herself off of the GE AFS computer system, make personnel phone calls and then log back onto the system. Diliberti and

Duncan then met with Helms to discuss Porties' performance and conduct and, at that time, concluded that her employment should be terminated because of her repeated failure to meet her performance goals and her refusal to follow management guidelines and directions.

Duncan prepared a Review Committee Summary to present to the Termination Review Committee. In this summary, Duncan identified the various concerns and problems she and Diliberti experienced with Porties, including: (1) her unsatisfactory performance and failure to meet her monthly performance target nine times during the period between July 2000 and June 2001; (2) a pattern of not following management directives on proper account procedures; (3) a continued display of a pattern of insubordination and unprofessional behavior that violated management guidelines and workplace policies; and (4) her continued failure to respond to the corrective action process notwithstanding the multiple verbal and written warnings she had received about management expectations. At the Termination Review Committee meeting, Duncan discussed her summary report as well as Porties' telephone usage during the overtime opportunity and her attempt to evade the system monitoring the next week. The Committee approved the recommendation that Porties' employment be terminated, and she was notified of the decision on January 18, 2002. Porties filed the instant lawsuit on June 4, 2002.

Even thought GE AFS has urged this Court to consider the fact that on February 6, 2002 Porties pled guilty to one count of wire fraud in which Porties admitted that she intended to devise and devised a scheme to defraud the United States Board of Education in connection with her employment as a unit supervisor for CSC Credit Services, Inc., we have not taken Porties' conviction into account for purposes of resolving this summary judgment motion. However, we do note that such information probably would be used to attack Porties' credibility, if this case

would have gone to trial. Moreover, GE AFS also would have had a strong defense that it would have fired Porties upon learning of her wire fraud conviction. Thus, even if Porties would have been able to create a material issue of fact for trial, the lost wages and benefits that she seeks likely would have been cut off as of August 21, 2002, which is the date GE AFS discovered that Porties pled guilty to wire fraud in connection with her employment as a collections manager with another company. However, as stated above, this Court did not consider any of the information about Porties' conviction or GE AFS's asserted defense based on the after acquired information in deciding this motion.

## DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment may only be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We apply this standard with particular care in employment discrimination cases in which intent and credibility are critical. *Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir. 1997). Nevertheless, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A party must present "more than a scintilla of evidence" to defeat summary judgment. *Senner*, 113 F.3d at 757.

Indeed, "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page*, 715

7

F.2d 1238, 1243 (7th Cir. 1983). Conclusory allegations will not defeat a motion for summary judgment." *Thomas v. Christ Hosp. and Medical Center*, 328 F.3d 890, 893-94 (7th Cir. 2003), citing *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888-89 (1990). "Speculation does not create a *genuine* issue of fact, instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) (emphasis added). The fact-intensive nature of employment discrimination cases does not oblige the court to "scour the record" for factual disputes to help the plaintiff avert summary judgment. *Greer v. Bd. of Ed. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001).

Local Rule 56.1 for the Northern District of Illinois requires that the parties support all disputed facts with specific references to the record and further emphasizes that it is inappropriate to include legal conclusions and/or argument in the Rule 56.1 statements of facts. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) (all relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary materials"). The Seventh Circuit repeatedly has sustained the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the local rules and regularly upholds strict enforcement of Rule 56.1. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (citing cases); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000).

In this case, Porties has failed to object properly and/or respond appropriately to many of GE AFS's asserted, and properly supported, facts. In many instances in both her statement of facts and responses to GE AFS's statement of facts, Porties includes legal conclusions and argument without specific factual support. *Servin v. GATX Logistics, Inc.*, 187 F.R.D. 561, 562

(N.D. Ill.1999) (legal argument is improper in statement of material facts under local rules). In addition, Porties repeatedly has failed to support her responses to GE AFS's statement of facts with admissible evidence. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (only admissible evidence may be considered on summary judgment).

Specifically, Rule 56(e) requires that affidavits offered in opposition to summary judgment be made on personal knowledge and set forth such facts as would be admissible at trial. "Although 'personal knowledge' may include inferences and opinions, those inferences must be substantiated by specific facts." *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 887 (7th Cir. 1998), quoting *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988). In many instances, that is not the case with Porties' affidavit which contains many unsupported conclusory assertions. In other instances, Porties discusses "evidence" in her statement of facts and memoranda of law which are not supported by the record. Therefore, we have relied heavily on GE AFS's version of the facts in deciding the summary judgment motion. However, it should be noted that we have reviewed and studied all of the materials submitted by Porties, and when appropriate, we have taken into consideration Porties' statement of material facts and responses to GE AFS's statement of facts.

## B. Title VII Claim

Porties claims that GE AFS violated Title VII by discriminating against and discharging her because of her race. Title VII of the Civil Rights Act of 1964 prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions or privileges of employment based on the employee's race. *Traylor v. Brown*, 295 F.3d 783, 788-89 (7th Cir. 2002), citing 42 U.S.C. § 2000e-2(a). A plaintiff alleging race discrimination under Title VII can prove such discrimination either by providing direct evidence of an employer's discriminatory intent, or by showing disparate treatment using indirect evidence and the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Alexander v. Wisconsin Department of Health and Family Services*, 263 F.3d 673, 682 (7th Cir. 2001).

Porties has not produced any direct evidence of race discrimination. Thus, we proceed under the *McDonnell Douglas* framework. Under this burden-shifting method, Porties must initially demonstrate: (1) she is a member of a protected class; (2) she performed her job satisfactorily and was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) other similarly-situated employees who are not members of the protected class were treated more favorably. *Koski v. Standex Intern. Corp.*, 307 F.3d 672, 676 (7th Cir. 2002); *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002). In the event Porties can establish a prima facie case of discrimination, the burden then shifts to GE AFS to provide a legitimate, non-discriminatory reason for its employment decision. *Jones v. Union Pacific R. Co.*, 302 F.3d 735, 742 (7th Cir. 2002). GE AFS's burden at this point is one of production only, not one of persuasion. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530

U.S. 133, 142 (2000). To satisfy this burden, GE AFS need only offer "admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981).

If GE AFS provides a rational, non-discriminatory reason for its action, then the burden shifts back to Porties to show that GE AFS's stated reason is a pretext for discrimination. *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002). Although the burden of producing evidence shifts between the employee and the employer, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993), quoting *Burdine*, 450 U.S. at 253.

GE AFS argues that Porties has failed to make a prima facie showing of discrimination because she cannot satisfy either the second or fourth prongs of the test. We agree with GE AFS. The record shows that Porties was not performing her job satisfactorily and that she was not meeting GE AFS's legitimate expectations because, among other things, she repeatedly failed to meet her monthly collection goals. GE AFS put Porties on a Corrective Action Plan in June 2001 after she did not meet her collection goals in nine of the previous thirteen months. Porties' Corrective Action Plan was later extended for insubordination and failure to follow management guidelines and procedures.

In response, Porties asserts that she could not meet her collection goals because her supervisors impeded her abilities by manually transferring the "better accounts" to white employees and that based on this discriminatory practice, GE AFS prevented her from meeting

11

her collection goals. However, these assertions without factual support are simply not enough to overcome Porties' burden. "An employee's self-serving statements about [her] ability . . . are insufficient to contradict an employer's negative assessment of that ability." *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992).

Porties cannot establish a genuine issue of fact based upon her own assertions that she was performing her job. Moreover, the record does not support Porties' claim that GE AFS was distributing accounts with a racial bias. GE AFS does not dispute that, in certain limited circumstances, accounts are distributed manually. However, GE AFS has provided legitimate and reasonable explanations for those instances, and Porties has failed to point to any specific instances, which are supported by the record, in which GE AFS has distributed accounts in a racially discriminatory manner. Thus, based on the record before this Court, Porties has failed to demonstrate that she was performing her job satisfactorily and was meeting her employer's legitimate expectations.

Porties also has failed to demonstrate that other similarly-situated employees who are not members of the protected class were treated more favorably. In order to meet her burden on this fourth prong of the test, Porties must show that there is an individual or individuals directly comparable to her in all material aspects who received more favorable treatment. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 679 (7th Cir. 2002). In considering these material aspects, the "court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). However, Porties has offered absolutely no evidence that other similarly-situated non-African American employees were treated more favorably. Specifically, she has not presented any evidence that similarly-

situated white employees were treated more favorably in the assignment of accounts, in receiving a Corrective Action Plan or in receiving disability benefits.

Although Porties has claimed that non-African Americans were not subject to such actions, her conclusory allegations are insufficient: "conclusory allegations and self- serving affidavits, without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002). Porties' statements in her brief and affidavit without corroborating evidence amount to nothing more than self-serving, conclusory allegations and should not be considered as evidence. *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 615 (7th Cir. 2001) (plaintiff is not permitted to submit self- serving conclusory testimony or "uncorroborated generalities" to satisfy evidentiary burden in a Title VII claim); *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999) (court must disregard on summary judgment self-serving statement without factual support in the record).

In regard to the assignment of accounts, GE AFS specifically explained that accounts were assigned randomly except in those instances specifically identified and enumerated above. Beyond the conclusory statements and speculation contained in her statement of facts, Porties has not identified any specific examples, which are supported by admissible evidence, to support her claim that accounts were manually distributed to benefit similarly-situated white employees. In regard to the imposition of disciplinary actions, the record shows that GE AFS placed five other employees, including one Hispanic, one Caucasian, two African American employees and one whose race is unknown, on Corrective Action Plans for their failure to meet performance goals. Finally with regard to disability benefits, Porties has not cited a single example when a similarly-situated white employee received 100% of his benefits while a disciplinary action was pending

and he was out of work on a disability leave. Thus, based on the record before us, Porties has failed to establish the fourth prong of her prima facie case.

Assuming *arguendo* that Porties could establish a prima facie case of race discrimination, the burden then would shift to GE AFS to provide a legitimate, non-discriminatory reason for its employment decision. *Jones v. Union Pacific R. Co.,* 302 F.3d 735, 742 (7th Cir. 2002). GE AFS states that it discharged Porties because she was not performing her job satisfactorily, which is a legitimate and non-discriminatory reason. Since GE AFS has provided a rational, non-discriminatory reason for its action, we must now proceed to the issue of pretext. Porties may satisfy this element with evidence that the defendant was more likely than not motivated by a discriminatory reason or that its explanation is not worthy of credence. *O'Neal v. City of New Albany,* 293 F.3d 998, 1005 (7th Cir. 2002); *Reeves,* 530 U.S. at 143 (to show pretext, plaintiff bears the burden of demonstrating that the employer's ostensible justification for its decision is unworthy of credence).

The Seventh Circuit has repeatedly reiterated that courts "do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision." *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir. 2000). Pretext will not be found in an ill advised or incorrect decision. *Id.* Instead, the Court examines the record to see if there is evidence that the employer is lying to cover up illegal discrimination. *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1012-13 (7th Cir. 2000). The record plainly reflects GE AFS's repeated warnings to Porties about her unsatisfactory work performance. Furthermore, Porties' failure to show that she was meeting GE AFS's legitimate expectations supplies GE AFS with a legitimate, non-discriminatory basis for discharging her. There is nothing in the record to

14

indicate that GE AFS is lying to cover up some illegal discrimination. Thus, Porties has failed to demonstrate that GE AFS's proffered reason for firing her is a pretext for discrimination.

Ultimately, Porties cannot establish a prima facie showing of discrimination with respect to any of the actions that she alleged GE AFS took against her for discriminatory reasons. Porties has not shown that her race was a motivating factor in GE AFS's decision to discharge her or that GE AFS's reasons were false and the real reason was discrimination based on race. *King v. Preferred Technical Group,* 166 F.3d 887, 892-93 (7th Cir. 1999) (plaintiff must produce "significantly probative admissible evidence" from which the trier of fact could infer that the employer's reason was false and that the actual reason was discriminatory). To the contrary, GE AFS gave Porties ample opportunity to improve her performance and attempted to work with her to resolve the perceived problems before it determined that her work performance did not merit continued employment.

### C. Retaliation Claim

Porties also claims that GE AFS discharged her in retaliation for filing charges of discrimination with the IDHR. Title VII prohibits discrimination against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, or assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To prove retaliation under this provision, Porties again must present direct evidence or proceed under an indirect method, which is an adaptation of the *McDonnell Douglas* burden shifting analysis in the context of a retaliation claim.

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a statutorily protected activity; and (2) she suffered an adverse employment action. *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002). If the evidence is uncontradicted, then the plaintiff is entitled to summary judgment. *Id.* However, if the evidence is contradicted, the case must be tried unless the defendant employer presents unrebutted evidence that it would have take the adverse employment action against the plaintiff even if there had been no retaliatory motive. *Id.*

In this case, GE AFS does not dispute that Porties engaged in statutorily protected activity by filing a claim of discrimination with the IDHR or that her discharge constitutes an adverse employment action. GE AFS also concedes that the seven-week time period between the date Porties amended her IDHR claim (November 29, 2001) and her discharge (January 18, 2002) creates a causal connection between the two events. However, the mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing rarely is sufficient in and of itself to create a triable issue of fact. *Id.*, citing *Bilow v. Much Shelist Freed Deneberg Ament & Rubenstein*, 277 F.3d 882, 895 (7th Cir. 2001).

Indeed, GE AFS argues that Porties' retaliation claim fails because she cannot rebut the fact that GE AFS would have discharged her anyway. It is not disputed that GE AFS put Porties on a Corrective Action Plan in June 2001 and that she remained on it through January 2002 when she was discharged. Porties did not complain of any alleged discriminatory conduct until after GE AFS initiated the first disciplinary action against Porties. It was only in response to the June 2001 Corrective Action Plan that Porties first claimed that she suffered discrimination and

16

harassment. However, as discussed above, Porties has failed to establish discriminatory intent with respect to any of the actions that GE AFS took. Porties has not shown that her race was a motivating factor in GE AFS's decision to place her on a Corrective Action Plan and ultimately in its decision to discharge her. Porties also has not shown that GE AFS's reasons were false or that the real reason was discrimination based on race. Thus, Porties has failed to present direct evidence of retaliation.

Under the alternative route to summary judgment, which the Seventh Circuit has termed "the adaptation of *McDonnell Douglas* to the retaliation context," a plaintiff must show that "after filing the discrimination charge only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner." *Stone*, 281 F.3d at 644. If the defendant employer presents no evidence in response, the plaintiff is entitled to summary judgment. *Id.* However, if the defendant employer presents "unrebutted evidence of a noninvidious reasons for the adverse action," then the defendant employer is entitled to summary judgment. *Id.*

GE AFS states that it discharged Porties because she was not performing her job satisfactorily, and Porties' failure to show that she was meeting GE AFS's legitimate expectations supplies GE AFS with a legitimate and non-retaliatory basis for discharging her. Moreover, Porties cannot show that any similarly-situated employees were treated better. There is no evidence in this record from which this Court could conclude that similarly-situated employees were treated better. There are no other employees who, while on a Corrective Action Plan, violated management directives in manner comparable to Porties and who was not
17

discharged. Based on the record before us, we conclude that Porties has failed to demonstrate that GE AFS's actions were pretextual, discriminatory or retaliatory.

## CONCLUSION

For all of the foregoing reasons, General Electric Company d/b/a GE Capital Auto Financial Services' motion for summary judgment is granted.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: April 27, 2004